# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| CLIFTON THOMPSON BEY, | : | CIVIL NO. 3:CV-10-0975 |
|---|---|---|
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| T.R. SNIEZEK, | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Clifton Thompson Bey ("Thompson"), an inmate formerly confined at the Federal Correctional Institution at Schuylkill, Pennsylvania. Thompson contends that his constitutional rights were violated in the context of a disciplinary hearing. (Doc. 1.) For the reasons discussed below, the petition will be denied.

I. **Statement of Facts**

On July 27, 2009, Thompson was charged in an incident report with "Fighting With Another Person." (Doc. 1-2, at 1). The incident was described as follows: "On 7/27/09, at approximately 11:00 a.m., FCI Schuylkill, S.I.S. Case #09-033 concluded. The investigation revealed inmate Clifton Thompson, Reg. No. 02330-000 and inmate [ ] Reg. No. 17168-055, were in a physical altercation resulting in them striking each other with closed fist. As a result of the altercation, [ ] sustained a laceration to the inside of his lower lip. The laceration was approx. 3/8" long. Thomspon did not sustain any noticeable injuries during

the fight." (Doc. 8-3, at 19.)

Thompson was provided with a copy of the incident report on July 27, 2009. The following day, he appeared before the Unit Discipline Committee ("UDC"). (Doc. 8-3, at 21.) He was notified that the matter was referred to the disciplinary hearing officer ("DHO") for further hearing. (Id.) He indicated that he did not want a staff representative, but requested that two inmate witnesses be allowed to appear on his behalf. (Id.)

The disciplinary hearing was held on August 17, 2009. (Doc. 8-3, at 24). After being advised of his rights, and indicating that he understood them, Thompson made the following statement:

> "I wasn't in any altercation with [ ]." Thompson stated, "[ ] had the altercation with Robinson and I was the one who broke up the fight and I only had my radio in my hand." Thompson stated, "Robinson and the other dude were fighting and another inmate came to my cell and told me and I went to break up the fight." Thompson stated, "[ ] swung at me and almost hit me first and I stood between them and I grabbed [ ] around the waist and took him to the side."

(Id.)

His two witnesses testified as follows:

Inmate [ ] #12288-067 stated: All I know is that they (officer) said he [ ] may have had a weapon. All I said is that I don't believe he (Thompson) had a weapon. He (Thompson) left the cell and no one had entered the cell to get Thompson. I stayed in bed and when the door opened it was [ ]. I don't know what had happened.

Inmate [ ] # 19404-056 stated: All I know is that the incident happened and Thompson went back there and got into an altercation with another inmate. Thompson whooped him and that was it.

(Doc. 8-3, at 25.)

2

After considering all of the evidence, the DHO found based on the greater weight of the evidence and facts that Thompson committed the prohibited act of Fighting With Another Person, Code 201, on June 9, 2009. (Id. at 26.) In arriving at this conclusion, he considered Thompson's statement and the statements of his inmate witnesses. He also considered the following documentary evidence: (1) Memorandum from S. Danner dated 6/9/09; (2) Memorandum from W. Warner, SOS dated 6/9/09; (3) Memorandum from J. Tomlinson, SIS Technician date 6/9/09; (4) BOP Health Services Clinical Encounter dated 6/9/09 by Kevin Vincenzes, EMT; (5) SIS Inmate Interview Forms dated 6/29/09; (6) Photographs dated 6/9/09, taken by T. Hansel, Lt.; and, (7) CCTV Video Surveillance Footage dated 6/9/09. The DHO specifically found that:

> Thompson's involvement in the incident as noted in Section 11 of Incident Report 1897664, as provided by J. Tomlinson, SIS Technician, was viewed as inculpatory in this case. Paraphrased, Mr. Tomlinson writes: on 7/27/09, at approximately 11:00 am, FCI Schuylkill, SIS Case #09-033 concluded. The investigation revealed inmate Clifton Thompson, Reg. No. 02330-00 and inmate [ ] Reg No. 17168-05, were in a physical altercation resulting in them striking each other with closed fist. As a result of the altercation, [ ] sustained a laceration to the inside of his lower lip. The laceration was approx. 3/8" long. Thompson did not sustain any noticeable injuries during the fight.
>
> Inculpatory evidence in the form of a memorandum from Lt. Danner dated 6/9/09, corroborated the evidence cited in the incident report in this case. Lt. Danner writes: During the review of the CCTV video footage, staff observed inmates [ ], Thompson and [ ] involved in an altercation. Inmate Robinson was observed with a white sock with a heavy weight in his hand outside the cell in the main common area. Thompson was observed going after [ ] and [ ]. The video surveillance footage support staff's observations of the incident.
>
> Inculpatory evidence in the form of a memorandum from Officer Tomlinson dated 6/23/09 corroborated the evidence cited in this report. Officer Tomlinson writes: on 6/23/09 I monitored the CCTV of Unit 3B. I observed [ ] fall to the range floor

outside of C10. [ ] appeared to be attempting to avoid being struck by an unknown inmate. Thompson is observed with a group of inmates entering C10. [ ] is observed leaving the area and going down the stairs. There is a surge of inmates going towards and into C10. Thompson is observed exiting C10 holding his headphones in his hands. Thompson enters his assigned cell. Thompson exits his cell and has what appears to be a winter hat with an unknown object concealed inside it for weight. Thompson walks down the range floor towards the stairs adjacent cell 203. [ ] is observed exiting C10 with a weighted athletic sock. The sock is observed bouncing in [ ]'s hand from the weight concealed in it. [ ] opens Thompson's assigned cell and looks in. Thompson is observed looking back at [ ] and then walks down the stairs. [ ] is observed motioning to Thompson from the top of the stairs. [ ] then turns around after seeing the unit officer and heads back to C10. The Unit Officer follows Robinson to C10 and discovers him washing blood out of his mouth.

The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information. The inmate witnesses corroborated Thompson was involved in a physical altercation with [ ]. Inmate Thompson admits to placing his hands around [ ] during this altercation. Inmate Thompson's actions constitute his involvement in a mutual physical altercation with another inmate.

(Doc. 8-3, at 26.)

In imposing various sanctions, the DHO reasoned as follows:

Thompson's involvement in a fight with another inmate potentially threatened not only the safety of the participants, but staff responding to the incident and other inmates in the area. Sometimes what appear to be isolated incidents (a fight in this case) evolve to involve others. Accordingly Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish Thompson for his behavior, while the Loss of Privileges (Phone, Visit, Commissary) is sanctioned in an effort to deter him from this behavior in the future.

The DHO is recommending a Disciplinary Transfer to meet Thompson's greater need for supervision as well as to an institution commensurate to his security needs.

(Id.) On appeal, it was determined that the decision of the DHO was based upon the greater

4

weight of the evidence and the sanctions imposed were consistent with the severity level of the offense and in compliance with policy. (Id. at 29-30, 33.)

Thompson challenges the sufficiency of the evidence relied upon by the DHO and the severity of the sanctions imposed. (Doc. 1, at 6.) He seeks restoration of his good conduct time. (Id. at 7.)

## II. Discussion

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly unless circumstances beyond the control of the investigator intervene. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because of the seriousness of the offense, the matter was referred for a disciplinary hearing.

Thompson contests the sufficiency of the evidence the DHO relied upon in finding him guilty of the charged offense. The DHO's decision is required to be supported by some

5

evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was some evidence from which the conclusion of the tribunal could be deduced. See Hill, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether any evidence in the record that could support the DHO's conclusion. See id.

In considering the evidence, as recited in the statement of facts section, *supra*, the court finds that there was "some evidence" to support the DHO's decision, specifically, he considered Thompson's statement and the statements of his inmate witnesses as well as the following documentary evidence: (1) Memorandum from S. Danner dated 6/9/09; (2) Memorandum from W. Warner, SOS dated 6/9/09; (3) Memorandum from J. Tomlinson, SIS Technician date 6/9/09; (4) BOP Health Services Clinical Encounter dated 6/9/09 by Kevin Vincenzes, EMT; (5) SIS Inmate Interview Forms dated 6/29/09; (6) Photographs dated 6/9/09, taken by T. Hansel, Lt.; and, (7) CCTV Video Surveillance Footage dated 6/9/09. In doing so, the court notes that, "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Thompson's claim

that there was insufficient evidence to support the DHO's decision.

Thompson also challenges the severity of the sanctions imposed by the DHO. BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include High Category Code 201, Fighting With Another Person. 28 C.F.R. § 541.13, Table 3. The sanctions that may be imposed upon a finding of guilt of a "High Category" offense include, *inter alia*, disallowance of fourteen to twenty-seven days of earned good conduct time, forfeit non-vested good conduct time up to 50% or 60 days, whichever is less, up to thirty days disciplinary segregation, and loss of privileges. 28 C.F.R. §541.13, Tables 3 and 4. He is not entitled to relief on this ground because the sanctions imposed, disallowance of twenty-seven days of good conduct time, forfeiture of non vested good conduct time of thirty-six days, disciplinary segregation sentence, and loss of privileges, are within the range of appropriate sanctions for "High Category" offenses. See id.

### III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court

Dated: January 31, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIFTON THOMPSON BEY, | : CIVIL NO. 3:CV-10-0975 |
| Petitioner | : |
| | : (Judge Munley) |
| v. | : |
| T.R. SNIEZEK, | : |
| Respondent | : |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 31st day of January 2011, upon consideration of the petition for writ of habeas corpus (Doc. 1), and in accordance with the foregoing memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. Petitioner's motion to expedite (Doc. 10) is rendered MOOT.

3. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**